[L. A. No. 21293. In Bank. May 11, 1951.]

MAX BECK, Respondent, v. IDA W. UNRUH
et al., Appellants.

Alfred L. Armstrong for Appellants.

Charles I. Rosin for Respondent.

SHENK, J.—The plaintiff sought to quiet his title to real property in Los Angeles County. He claimed as the grantee of a trustee in bankruptcy. The defendant claimed as the grantee of the state pursuant to tax sale. The trial court concluded that the defendant's tax title was void and entered judgment for the plaintiff. The defendant appealed.

There is no dispute as to the facts. On November 4, 1927, the United Finance Company filed a voluntary petition in bankruptcy and on that date was adjudicated a bankrupt. Among the listed assets of the bankrupt was the real property described in the complaint. Prior to the filing of the petition in bankruptcy and in June, 1927, the real property was sold to the state for nonpayment of the 1926-1927 taxes and on December 1, 1932, the property was deeded to the state. On December 11, 1936, the bankruptcy court discharged the trustee in bankruptcy and terminated the bankruptcy proceeding without redemption or disposition of the property. On May 19, 1944, the property was sold and deeded by the state to Fred R. Salter and by mesne conveyances the defendant Unruh became the holder of the tax title. Subsequently, on May 2, 1947, the bankruptcy court reopened the bankruptcy proceedings, and on the following December 15th the trustee sold the bankrupt's interest to the plaintiff. The present action was commenced on March 15, 1948.

On the foregoing facts the trial court concluded that from November 4, 1927, to December 15, 1947, when the sale to the plaintiff by the trustee in bankruptcy occurred, the real property was in the custody of the bankruptcy court, that the state had no power to sell the property and that the defendant's tax title was void.

The defendant pleaded the bar of sections 3521 and 3725 of the Revenue and Taxation Code. These sections are inapplicable since they provide time limitations governing the

commencement of actions based on alleged invalidities due to irregularities or defects in the tax proceedings and tax deeds. Such irregularities, defects and invalidities, which assume the power of the state to issue a deed, are not brought into question. Here the question is whether, because of an invoked constructive possession and exclusive control by the bankruptcy court, the state could issue a deed in any event. That question must be resolved apart from the limitation provisions.

The correctness of various basic propositions may be assumed. ■ The courts of this state have recognized the general rule that property belonging to the bankrupt is in the lawful custody of the bankruptcy court from the time of the filing of the petition, and that from that time that court has either actual or constructive possession thereof. (*Nuckolls* v. *Bank of California,* 10 Cal.2d 266, 274 [74 P.2d 264, 114 A.L.R. 708] citing cases; *Wells* v. *California Tomato Juice, Inc.,* 47 Cal.App.2d 634, 636 [118 P.2d 916]; *Manter* v. *Howard,* 94 Cal.App.2d 404, 408 [210 P.2d 880].) ■ Real property in the constructive possession of the bankruptcy court generally may not be subject to foreclosure proceedings, or sold by the lienor under a power of sale to satisfy the lien, without the permission of the bankruptcy court; and this rule has been applied to invalidate a sale by the state to a purchaser at a tax sale. (*Dayton* v. *Stanard,* 241 U.S. 588 [36 S.Ct. 695, 60 L.Ed. 1190]; *In re Eppstein,* 156 F. 42 [84 C.C.A. 208, 17 L.R.A.N.S. 465]; 5 Remington on Bankruptcy, 4th ed. § 2364; see, also, *Straton* v. *New,* 283 U.S. 318 [51 S.Ct. 465, 75 L.Ed. 1060]; *Isaacs* v. *Hobbs Tie & T. Co.,* 282 U.S. 734 [51 S.Ct. 270, 75 L.Ed. 645]. *Cf. Hiscock* v. *Varick Bank of New York,* 206 U.S. 28 [27 S.Ct. 681, 51 L.Ed. 945]; *Heffron* v. *Western Loan & Building Co.,* 84 F.2d 301 [112 A.L.R. 501]; *Hardt* v. *Kirkpatrick,* 91 F.2d 875; *Griffin* v. *Smith,* 177 Cal. 481 [171 P. 92].) ■ Where the general rule has been held applicable it has been because of the interest of the bankrupt's estate and claimants thereto in the excess of the value of the property over and above the amount necessary to discharge the lien.

■ These principles however do not absolve the trustee in bankruptcy or the bankruptcy court of duties and obligations in the administration of the bankrupt's estate. ■ The property comes to the trustee subject to valid existing liens including liens for taxes. (*Continental Ill. Nat. Bank &*

*T. Co.* v. *Chicago, Rock Island & P. Ry. Co.*, 294 U.S. 648, 676 [55 S.Ct. 595, 79 L.Ed. 1110] ; *Dayton* v. *Stanard, supra,* 241 U.S. 588; *In re Knox-Powell-Stockton Co.*, (Cal.) 100 F.2d 979, 982.) █ The trustee has only the rights in the property which the bankrupt had. █ Since the tax sale to the state had already taken place, he succeeded to the possession and to the right to redeem. The cases herein cited indicate that thereby he had the power to dispose of the property for the benefit of the bankrupt's estate subject to the state's lien, or to sell it free of the lien by discharging the lien from the proceeds of the sale or otherwise from the funds of the bankrupt, and to prevent a tax sale by the state without the bankruptcy court's permission. (See 6 Remington on Bankruptcy, 4th ed., § 2793.)

█ As noted, under the bankruptcy act the bankruptcy court has exclusive administration of the bankrupt's assets, but tax liens are preserved. And in the cases brought to our attention, or discovered through independent research, the courts were concerned with the actual invoked powers of the trustee and of the bankruptcy court then actively administering the bankrupt's estate. In the present case the trustee in bankruptcy is not seeking to set aside the tax sale, to discharge the lien, or to sell the property subject to the lien. The record shows that after the trustee had been discharged and the bankruptcy proceeding terminated by the bankruptcy court, and after the sale by the state, the court reopened the bankruptcy proceeding to dispose of the real property by sale apparently without recognition or discharge of the tax lien. The plaintiff rests on the principle of constructive possession and exclusive control of the bankruptcy court. But he presents no authority that such possession and control obtains when the bankrupt's estate is not in the course of active administration by that court. On the contrary, the implication in the decisions clearly is that such possession and control attach when the estate is in the course of administration in a court of bankruptcy. The tax sales held invalid in the *Dayton* v. *Stanard* case were made at such a time; that is, they were of "real property belonging to a bankrupt estate then in the course of administration in a court of bankruptcy. The property was in *custodia legis* and was sold without leave of court. Because of this the [bankruptcy] court held the sales invalid and entered a decree canceling the certificates of purchase and enjoining the County Treasurer from issuing tax deeds thereon."

The above noted discharge of the trustee and the termination of the bankruptcy proceeding occurred in 1936 when the country was still in the depths of the depression which had commenced shortly after the voluntary petition in bankruptcy was filed. The only reasonable conclusion is that the trustee abandoned the real property to the state as not worth the amount of the tax lien. Then more than ten years later and three years after the state had sold the property, he experienced a change of heart doubtless because of the increased value in real property following the close of the second world war, and sought to realize on the increased value for the benefit of the bankrupt's creditors. He proceeded without invoking the control of the bankruptcy court to set aside the deed and provide for reimbursement. He assumed to exercise his powers of administration merely by selling and conveying the property to the plaintiff. Thereby he left the parties claimant to litigate the controversy as to title in a state court.

It is not suggested that the state court has no jurisdiction to resolve the issues as to title. ▇▇▇ The constructive possession invoked does not interfere with the state court's jurisdiction in title controversies in the absence of the assertion of jurisdiction by the bankruptcy court. (See *Thompson* v. *Magnolia Petroleum Co.,* 309 U.S. 478 [60 S.Ct. 628, 84 L.Ed. 876]; *Saunders* v. *Given,* (1934) (Tex.Civ.App.) 70 S.W.2d 310, cert. den. 293 U.S. 599.) In effect here the bankruptcy court has abandoned the matter to the state court for determination.

▇▇▇ In view of the termination of the bankruptcy proceeding long prior to the time of the tax sale and in the absence of any intervention in the tax sale proceeding by the trustee or the bankruptcy court, it cannot be said on the record before us that the state was without power to resort to the only means at its disposal to return the property to the tax rolls. ▇▇▇ As implied in *Hardt* v. *Kirkpatrick, supra,* 91 F.2d 875, 879, the plaintiff is not in a position to complain of the flaunting of the claimed authority of the bankruptcy court which that court did not choose to exercise, or of invasions into the field of alleged exclusive control as to property which it in effect had abandoned. ▇▇▇ Under the circumstances, in the absence of active intervention, the result was to revest the state with the power to return the property to the tax rolls by means of the statutory tax sale proceedings. (*Cf. Harlow Realty Co.* v. *Cotter* (1933), 284 Mass. 68 [187 N.E. 118]; *Re North Star Ice & Coal Co.* (1918), (D.C. Tenn.) 252 F. 301.)

The conclusion follows from the undisputed facts that the deed from the state conveyed the title to the purchaser at the tax sale.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

The opinion was modified and respondent's petition for a rehearing was denied June 7, 1951.